GILBERT H. LARGE & CO., A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 3, 1937.*

PROVINE & WILLIAMS, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant is the owner of a large three-story-and-basement building of brick and concrete construction, located at the corner of Market and Webster Streets in the City of Taylorville, Illinois. For some time prior to, and on November 10th, 1933, the first floor of said building was occupied by the claimant as an automobile sales and service room, and the second and third floors and part of the basement of said building was occupied by officers and members of the Illinois National Guard who were then on duty in Christian County in connection with disorders in the Midland coal fields.

There was no written lease between the claimant and the respondent, but the occupancy of said premises by the military authorities was pursuant to a verbal understanding or agreement between the claimant and the officers of the Illinois National Guard in charge of such troops.

The building was heated by a sectional steam boiler which was located in the northeast corner of the basement. In order that there might be uniform heat at all times of the day and night for the men who were quartered in the building, the National Guard, upon the suggestion of the officer in charge, assumed the duty of firing the furnace. The necessary fuel was furnished by the claimant. Members of the National Guard were detailed by the proper officer to take care of the firing of the furnace in 24-hour shifts. The men detailed for such work were selected from the duty roster and were not chosen with any special reference to their knowledge of that kind of work.

The man who was detailed to fire the furnace on the 9th and 10th days of November, 1933, was Private Lawrence

Widener, who was then 18 years of age, and who had no previous knowledge of, or experience in work of that kind, and whose first experience with this furnace was on November 9th. On one or more occasions prior to November 10th, 1933, the man in charge of the furnace had permitted the water in the boiler to get low, and the claimant had notified the officer in charge, of such fact, and such officer promised to see that it was taken care of immediately. On the night of November 9th, 1933 the soldiers' quarters became very cold and it seemed impossible to heat the same, notwithstanding the fact that there was a good fire in the furnace. On the morning of November 10th, Private Widener noticed that the water in the boiler was low, but apparently failed to realize that there was any connection between that fact and the failure to heat the quarters. There was a heavy bed of coals in the furnace, and portions of the boiler became red hot, but nevertheless Widener continued active firing, in an attempt to get up some heat. Two of claimant's employees went to the basement that morning, while Widener was having trouble in getting up heat. One of the men suggested that Widener throw on more coal, and the other turned a small amount of water into the boiler. Shortly thereafter there was a muffled explosion which disturbed the asbestos covering of the boiler. The fire was drawn and it was ascertained that seven sections of the boiler were broken or burned out, and were thereby rendered worthless.

Thereupon the officers of the National Guard sent trucks from Taylorville to South Bend, Indiana for new sections which were obtained and installed in said boiler as soon as possible, at a cost and expense of $1,014.37. The new sections were purchased and installed at the instance of the officers of the National Guard, but payment therefor was made by the claimant, and it now seeks to recover the amount which it was required to pay in order to replace the sections which were ruined as aforesaid.

No question is raised as to the necessity for the repairs which were thus made, or the reasonableness of the charge made therefor.

The Attorney General resists the claim on two grounds:

First: that the injury in question resulted from the negligence of the servants and agents of the claimant, and

therefore the respondent is not liable for the damage in question.

Second: That the respondent at the time in question was engaged in a governmental function and that therefore it is not liable for the carelessness and negligence of its servants and agents in the absence of a statute making it so liable.

As to the first point made by the Attorney General;—we are of the opinion, upon a careful consideration of the entire record, that this point is not supported by the evidence.

The second point raised by the Attorney General requires a consideration of the allegations of the original and of the amended complaint, and the legal effect thereof.

The original complaint was filed herein on May 4th, 1934, and alleges that there was a verbal agreement or contract between the claimant and respondent with reference to the use of that portion of the building occupied by the members of the National Guard; that it was the duty of the respondent to so use the building as not to injure or damage the same, and to surrender it back to the claimant in good condition; that notwithstanding such duty, the respondent carelessly and negligently fired said furnace, and negligently overheated and overfired the same, at a time when there was not sufficient water therein, whereby seven sections thereof were ruined and rendered worthless.

The amended complaint which was filed herein on May 1st, 1936 contains allegations similar to those in the original complaint with reference to the contract or agreement between the claimant and respondent, and also contains an allegation that as a part of such agreement, the respondent undertook and agreed to surrender said building to the claimant in good condition. The amended complaint, however, omits all allegations with reference to the carelessness and negligence of the officers and agents of respondent in the firing of the furnace. Claimant's right to recover, as set forth in the amended complaint, is based entirely upon respondent's breach of contract in failing to surrender the building back to claimant in as good condition as it was at the time of the letting.

Under the amended complaint, claimant's case is an action on contract, and not an action of tort, and is based upon the implied contract of the respondent to surrender the demised premises at the termination of the tenancy, in as

good condition as it was at the beginning of the term, ordinary wear and tear excepted.

Section 63 of The Military and Naval Code of this State provides as follows:

"The Quartermaster's Department is charged with furnishing all means of transportation, clothing, tentage, fuel, stoves, and other means of heating; * * * and, in general, all necessary supplies and service not specified for some other staff Department."

The military authorities therefore had full power and authority to rent the quarters in question, and provide for the heating thereof.

In 16 R. C. L. p. 1085, section 603, the law governing cases of this kind is set forth as follows:

"Independent of any contract or express agreement, at common law a tenant must treat the premises in such a manner that no substantial injury shall be done them through any negligent or wilful misconduct on his part. This implied obligation is part of the contract itself, as much so as if incorporated into it by express language; and it results from the relation of landlord and tenant between the parties which the contract creates."

The principles of law here involved are similar to those involved in the case of *United States* vs. *Bostwick*, 94 U. S. 53 (24 Law Ed. 65), which case came to the United States Supreme Court on appeal from the United States Court of Claims.

That case involved, among other things, a claim for damage done to certain property of the claimant during the time said property was occupied by the soldiers of the United States Army for the purposes of a hospital and camp ground.

There was no written lease for the premises but the same were occupied pursuant to a letter or note of General Mansfield to one Lovett who was acting for the owners of the property. With reference to the effect of the agreement between the parties, the court there said:

"The contract is one by which Mr. Lovett agreed to let and United States to hire the premises described for the term of one year, with the privilege of three, at a rent of $500.00 a month, and without restriction as to the use to which the property might be put. United States agree to nothing in express terms, except to pay rent and hold for one year."

"But in every lease there is, unless excluded by the operation of some express covenant or agreement, an *implied obligation* on the part of the lessee to so use the property as not, unnecessarily to injure it, or, as it is stated by Mr. Comyn, 'to treat the premises demised in such manner that no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the lessee.' Com. Land & T. 188. This implied obligation is part of the contract itself, as

much so as if incorporated into it by express language. It results from the relation of landlord and tenant between the parties which the contract creates. *Holford* vs. *Dunnett*, 7 M. & W. 352. It is not a covenant to repair generally, but to so use the property as to avoid the necessity for repairs, as far as possible. *Horsefall* vs. *Mather*, Holt, 7; *Brown* vs. *Crump*, 1 Marsh, 569."

\* \* \* \* \* \* \*

"The United States when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf. All obligations which would be implied against citizens under the same circumstances will be implied against them. No lease in form was ever executed in this case; but the contract, followed by the delivery of possession and occupation under it, is equivalent for the purposes of this action to a lease duly executed, containing all the stipulations agreed upon."

\* \* \* \* \* \* \*

After holding that any injury done to the property during the occupation thereof by the soldiers previous to the agreement for a lease, could not be recovered for in that action, the court said:

"But damage after the lease commenced, and while the United States were actually in possession under it, occupies a different position. That comes within the contract by which the rights of the parties in this action are to be determined. As has been seen, that does not bind the United States to make good any loss which necessarily results from the use of the property, but only such as results from the want of reasonable care in the use. It binds them not to commit waste, or suffer it to be committed. If they fail in this, they fail in the performance of their contract, and are answerable for that in the Court of Claims, which has jurisdiction of "all claims founded upon any contract, express or implied, with the Government of the United States, which may be suggested to it by a petition filed therein." R. S. sec. 1059; (10 Stat. at L., 612, sec. 1.) If there had been in this lease an express agreement to repair, certainly it could not have been successfully claimed that the Court of Claims would not have had jurisdiction to award damages for a failure to rebuild after the fire, even though the fire was caused by the soldiers while in the hospital for treatment. But the implied obligation as to the manner of the use is as much obligatory upon the United States as it would be if it had been expressed. If there is a failure to comply with the agreement in this particular, it is a breach of the contract, for which the United States consent to be sued in the Court of Claims. All depends upon the contract. Without that, the jurisdiction does not include actions for damages by the army; with it, damages contracted against may be recovered as for a breach of the contract."

"It appears in the finding that, during the occupancy under the lease, ornamental trees were destroyed, fences and walls torn down, and the materials used for sidewalks and the erection of other buildings, or carried away; and that stone was quarried and gravel dug from a stone-quarry and gravel-pit on the premises, and taken away. This was voluntary waste, and within the prohibition of the implied agreement in the lease. For this the Court of Claims can award compensation in this action."

The action of the claimant being an action of contract and not in tort, the rule contended for by the respondent does not apply.

No question is raised as to the authority of the military officers to enter into the contract with the claimant for the occupancy of the premises owned by it. The contract being within the authority of the officers making the same, the State is bound thereby and cannot escape the obligations legally resulting therefrom.

Under the allegations of the amended complaint, the evidence in the record, and the law as above set forth, claimant is entitled to an award for the amount expended by it as hereinbefore set forth.

Award is therefore entered in favor of the claimant for the sum of One Thousand Fourteen Dollars and Thirty-seven Cents ($1,014.37.)